UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARY MCNUTT,

               Plaintiff,

    v.

SWIFT TRANSPORTATION CO. OF
ARIZONA, LLC; and Does 1–10,
inclusive,

               Defendants.

RICHARD D. WOECK,

               Plaintiff,

    v.

SWIFT TRANSPORTATION CO. OF
ARIZONA, LLC; and Does 1–10,
inclusive,

               Defendants.

CASE NO. C18-5668 BHS

ORDER GRANTING PLAINTIFFS'
JOINT MOTION FOR
CONDITIONAL CERTIFICATION
IN PART AND RESERVING
RULING ON NOTICE

     This matter comes before the Court on Plaintiffs Mary McNutt ("McNutt") and

Robert D. Woeck, Jr.'s ("Woeck") (collectively "Plaintiffs") motion for conditional class

certification and court-authorized notice under the Fair Labor Standards Act ("FLSA").
Dkt. 44. The Court has considered the pleadings filed in support of and in opposition to
the motion and the remainder of the file and hereby grants the motion for preliminary
certification in part and reserves ruling on the proposed notice for the reasons stated
herein.

## I.   PROCEDURAL HISTORY

On August 15, 2018, McNutt filed a class action complaint against Defendants
Swift Transportation Co. of Arizona, LLC ("Swift") and Does 1–10. Dkt. 1. McNutt
alleged failure to pay rest breaks, failure to pay minimum wage, failure to pay overtime,
and willful refusal to pay wages pursuant to Washington State law. *Id.* On April 1, 2019,
McNutt moved for leave to file an amended complaint. Dkt. 20. On May 31, 2019, the
Court granted the motion. Dkt. 26. On June 3, 2019, McNutt filed an amended complaint
styled as a collective action pursuant to section 16 of the FLSA, 29 U.S.C. § 216(b). Dkt.
27. McNutt alleged violation of the minimum wage requirements of the FLSA, 29 U.S.C.
§§ 201–219. *Id.*

On June 21, 2019, McNutt filed a stipulated motion to consolidate this action with
Woeck's action against the same defendants, *Woeck v. Swift Transp. Co. of Arizona,
LLC*, C19-5342-BHS, and on June 28, 2019, the Court granted the motion. Dkts. 28, 30.

On December 23, 2019, Plaintiffs moved for conditional certification. Dkt. 44. On
January 24, 2020, the parties stipulated to continue the dates for conditional certification,
Dkt. 51, and on January 27, 2020, the Court granted the motion, Dkt. 52. On February 20,
2020, Swift moved for leave to file over-length briefs, Dkt. 55, and on February 21, 2020,

1    the Court granted the motion, Dkt. 56. Also on February 21, Swift responded. Dkt. 57.

2    On March 9, 2020, Plaintiffs replied. Dkt. 58.

3                              **II.   FACTUAL BACKGROUND**

4              Plaintiffs are truck drivers who allege that Swift failed to pay them for all hours

5    worked. Dkt. 27, ¶ 1.[1] They allege they were paid based on the number of miles driven

6    transporting goods. *Id*. ¶ 8. They allege that they drove "over-the-road" ("OTR")

7    meaning they "would be gone on trips for days at a time." *Id*. They allege that they were

8    not paid for on-duty time when not driving, "result[ing] in significant uncompensated on-

9    duty time" for OTR trips. *Id*. ¶ 9. They allege that in many weeks they were paid less

10   than minimum wage for each hour worked and allege that their hours worked include

11   time spent driving, in inspections, "waiting for directions from Swift, waiting for

12   completion of pick up or delivery, refueling, and myriad other tasks required by Swift."

13   *Id*. ¶ 10.

14             Plaintiffs allege that "[w]hile in route to a delivery, [they] were required to be

15   continuously on duty and, therefore, worked at least 16 hours, if not 24 hours, under 29

16   C.F.R. § 785.22." *Id*. ¶ 11. Plaintiffs allege that the common questions at issue are "a)

17   [w]hether Plaintiffs and the Class are entitled to minimum wages under the FSLA; b)

18   [w]hether [Swift's] pay policies as to Plaintiffs and all other similarly situated violate

19   their rights to receive minimum wages [and] c) [w]hether [Swift] fail[s] to pay Plaintiff

20

21   _____

22             [1] The complaint in the consolidated action contains the same allegations. *See* C19-5342-
     BHS, Dkt. 1. This Order cites the complaint in the lead case.

and all others similarly situated minimum wage for all on duty, non driving time, under 29 C.F.R. § 785.22." *Id.* ⁋ 15.

Plaintiffs seek conditional certification of a collective action consisting of:

All persons currently or formerly employed by Defendant in the United States of America as drivers, who worked during trips of 24-hours or more, and were paid on a per-mile basis, at any time beginning December 23, 2016 until the date of judgment after trial.

Dkt. 44 at 2.[2]

## III.   DISCUSSION

**A.    Conditional Certification**

Under the FLSA, a plaintiff may bring a collective action on behalf of herself and other "similarly situated" employees.  29 U.S.C. § 216(b).

### 1.    Standard for Conditional Certification

In *Campbell v. City of L.A.*, 903 F.3d 1090, 1100 (9th Cir. 2018) ("*Campbell*"), the Ninth Circuit provided an extensive discussion of collective actions. Prior to this decision, there was "little circuit law defining 'similarly situated.'" *Rozeboom v. Dietz & Watson, Inc.*, No. 2:17-cv-01266-RAJ, 2018 WL 2266692, at *1 (W.D. Wash. May 17, 2018) (citation omitted). Though preliminary certification was not at issue in *Campbell*, the Ninth Circuit's comments on the collective action format are instructive given the minimal circuit law on the issues. 903 F.3d at 1117

"It is evident from the statute that workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint

---

[2] The Court cites ECF page numbering throughout.

1    litigation, in writing." *Id*. at 1100. However, the statute does not define "similarly

2    situated" or set standards for evaluating "the propriety of a collective proceeding." *Id*.

3    Courts have developed a two-step process "to evaluate the propriety of the collective

4    mechanism—in particular, plaintiff's satisfaction of the 'similarly situated'

5    requirement—by way of a two-step 'certification' process." *Id*. (citing 1 McLaughlin on

6    Class Actions § 2:16 (14th ed. 2017)).

> As this process most often functions, plaintiffs will, at some point around
> the pleading stage, move for 'preliminary certification' of the collective
> action, contending that they have at least facially satisfied the 'similarly
> situated' requirement. *See* 1 McLaughlin on Class Actions §2:16. Later,
> after the necessary discovery is complete, defendants will move for
> 'decertification of the collective action on the theory that the plaintiffs'
> status as 'similarly situated was not borne out by the fully developed
> record. *Id*.

*Id*.

       The Ninth Circuit emphasized that while the certification and decertification terms

have been adopted from Fed. R. Civ. P. 23, "[t]he underlying assumption of that

appropriation seems to be that collective and class actions, which to a degree resemble

one another, must be handled in procedurally parallel ways. That assumption is

unfounded." *Id*. at 1101. Preliminary certification under the FLSA is not an affirmative

gatekeeping decision by the district court—it "does not 'produce a class with an

independent legal status[] or join additional parties to the action.'" *Id*. (quoting *Genesis

Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). "'The sole consequence' of a

successful motion for preliminary certification is 'the sending of court-approved written

1  notice' to workers who may wish to join the litigation as individuals." *Id.* (quoting

2  *Genesis*, 569 U.S. at 75).

3        At the preliminary certification stage, the district court typically considers the

4  pleadings, which "may sometimes be supplemented by declarations or limited other

5  evidence." *Id.* at 1109 (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or.

6  2002)).

7          The level of consideration is "lenient," *Camesi v. Univ. of Pittsburgh Med.*
        *Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *Anderson v. Cagle's, Inc.*, 488 F.3d

8          945, 953 (11th Cir. 2007)—sometimes articulated as requiring "substantial
        allegations," sometimes as turning on a "reasonable basis," but in any event

9          loosely akin to a plausibility standard, commensurate with the stage of the
        proceedings.

10

11  *Id.* (citing, inter alia, *Halle v. W. Penn. Allegheny Health Sys., Inc*., 842 F.3d 215, 224 (3d

12  Cir. 2016)). The Third Circuit explains that conditional certification requires "a 'modest

13  factual showing'—something beyond mere speculation—to demonstrate a factual nexus

14  between the manner in which the employer's alleged policy affected him or her and the

15  manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at

16  224. "The 'similarly situated standard at this phase is fairly lenient and typically results in

17  certification." *Rozeboom*, 2018 WL 2266692, at *2 (citation omitted). Denial of

18  preliminary certification may be with or without prejudice. *Campbell*, 903 F.3d at 1109

19  (citations omitted).

20        The second step occurs after discovery is complete, when the employer "can move

21  for 'decertification' of the collective action for failure to satisfy the 'similarly situated'

22  requirement in light of the evidence produced to that point." *Id.* (citing 1 McLaughlin on

Class Actions § 2:16; 7B Fed. Prac. & Proc. Civ. § 1807). The Ninth Circuit explained

that the majority approach consists of a three-pronged test that "focuses on points of

potential factual or legal *dissimilarity* between party plaintiffs," considering the factual

and employment settings, the defenses available to defendants which may be individual

to each plaintiff, and fairness and procedural considerations. *Id*. at 1113 (citing *Thiessen*

*v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)). It criticized this test

for failing to explain "what *kinds* of similarity matter under the FLSA." *Id*. at 1114. It

explained that while analogy to Fed. R. Civ. P. 23's commonality requirement is not

entirely misplaced, importing the "rigorous analysis" of class action caselaw or Fed. R.

Civ. P. 23's adequacy, superiority, and predominance requirements into the FLSA is

inappropriate. *Id*. at 1115.

The Ninth Circuit emphasized that in considering the second step, "[p]arty

plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a

similar issue of law or fact material to the disposition of their FSLA claims." *Id*. at 1117.

"The district court may be able to decertify where conditions make the collective

mechanism truly infeasible, but it cannot reject the party plaintiffs' choice to proceed

collectively based on its perception of likely inconvenience." *Id*. To the extent a motion

for post-discovery decertification overlaps with the merits, the standard is effectively

summary judgment, though like in a summary judgment motion, the district court must

leave disputes of fact to the factfinder. *Id*. at 1119. The second step is not before the

Court at this time.

### 2.    Merits of Conditional Certification

Regarding the standard at conditional certification, Swift argues that in *Campbell*, the Ninth Circuit "held that when the merits overlap with the question of whether employees are 'similarly situated,' the Court should employ the standard applicable to summary judgment to a motion for certification." Dkt. 57 at 15 (citing *Campbell*, 903 F.3d at 1117–19). This is incorrect. In *Campbell*, the Ninth Circuit noted that credible allegations of an employer-wide policy discouraging the reporting of overtime "should suffice to make the [plaintiffs] similarly situated, as required to make a collective action." *Campbell*, 903 F.3d at 1102 (citing 29 U.S.C. § 216(b)). It described the preliminary certification as "loosely akin to a plausibility standard." *Id.* at 1109. The holding Swift references is in *Campbell*'s discussion of decertification where, the Ninth Circuit was clear that "[b]ecause preliminary certification is not challenged in this case, we address only the standard the district court should apply to post-discovery decertification. We conclude that, . . . [where] decertification overlaps with the merits of the underlying FLSA claims, the summary judgment standard is the appropriate one." *Id.* at 1117.

The FLSA currently requires employers to pay their employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a). The parties do not dispute that the Department of Labor ("DOL") regulations at issue are interpretive and are persuasive authority in deciding FLSA claims. *See Nance v. May Trucking Co.*, 685 F. App'x 602, 605 (9th Cir. 2017) (citing *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 940 (9th Cir. 2004)).

The parties focus on two DOL regulations: 29 C.F.R. § 785.22(a) and 29 C.F.R. § 785.41. Plaintiffs emphasize the former, and Swift emphasizes the latter.

> Where an employee is *required to be on duty* for 24 hours or more the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

29 C.F.R. § 785.22(a) (emphasis added).

> Any work which an employee is *required to perform while traveling* must, of course, be counted as hours worked. An employee *who drives a truck* . . . or an employee who is required to ride therein as an assistant or helper, *is working while riding, except* during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer.

29 C.F.R. § 785.41 (emphasis added). In essence, Plaintiffs argue that the members of the putative collective are required to be on duty for 24 hours or more when they are assigned to trips exceeding 24 hours in length and are thus subject to a cap on uncompensated hours under § 785.22(a), and Swift argues that pursuant to § 785.41 truck drivers are not continuously on duty when they are assigned to trips exceeding 24 hours in length.

Plaintiffs argue that truck drivers in the proposed collective were denied minimum wage based on a categorical legal theory, that 29 C.F.R. § 785.22(a) requires that "drivers hauling over-the-road are on duty for 24 hours or, if there is an agreement to exclude meal and sleep time from on duty hours, than [sic] 16 hours." Dkt. 44 at 11 (citing *Browne v. P.A.M. Transport, Inc.*, No. 5:16-CV-5366, 2018 WL 5118449, *2 (W.D. Ark. 2018); *Julian v. Swift Transp. Inc.*, 360 F. Supp. 3d 932, 952 (D. Ariz. 2018); *Woolridge v. Gateway Transp. of Ga., Inc.*, No. 4:19-CV-0053-HLM-WEJ, 2019 WL 2610904 (N.D. Ga. 2019)). They argue that under Swift's pay structure, OTR drivers were not paid

1  minimum wage for the minimum of 16 hours per day and that in fact there was no

2  agreement to exclude meal or sleeping time from on duty time. *Id*. at 6, 12 (citing Dkt.

3  44-3, McNutt Declaration, ¶ 6; Dkt. 44-4, Woeck Declaration, ¶ 6). Swift argues that

4  Plaintiffs' legal theory is not viable, so the members of the putative collective cannot be

5  considered similarly situated for the purposes of preliminary certification. Dkt. 57 at 8.

6        Arguing that the members of the putative class are similarly situated for the

7  purposes of their legal theory, Plaintiffs cite evidence that job duties do not vary

8  substantially among drivers pulling dry vans, flatbeds, or refrigerated trailers, both

9  Plaintiffs signed the same job description, and drivers in the proposed collective drive

10  trucks with sleeper berths because being away from home at night is part of their job

11  duties. Dkt. 44 at 7 (citing Dkt. 44-1 at 63–69 (Deposition of Kevin Quast), at 81

12  (McNutt Job Description) & at 83 (Woeck Job Description)). Plaintiffs' complaints allege

13  that they performed numerous non-driving tasks including "inspections, waiting for

14  direction from Swift, waiting for completion of pick up or delivery, refueling, and myriad

15  other tasks required by Swift and allege that while en route to a delivery, Plaintiffs were

16  required to be continuously on duty. Dkt. 17, ¶¶ 10–11; C19-5342BHS, Dkt. 1, ¶¶ 8–9.

17  Plaintiffs also cite evidence that drivers are paid on a per-mile basis and cite examples of

18  trips on which they were denied minimum wage under either a 24-hour or a 16-hour

19  theory. Dkt. 44 at 7–8 (citing Dkt. 44-3, ¶ 4; Dkt. 44-4, ¶ 4; Dkt. 44-1 at 25–27 (McNutt

20  Pay Stub) 76–79 (Woeck Pay Stub)). While Plaintiffs acknowledge that Swift sometimes

21  provides supplemental pay in addition to the per-mile rate, they argue this fails to amount

22  to minimum wage for a minimum of 16 hours per day. *Id*. at 13 n.2.

1    Swift argues that Plaintiffs' legal theory "is based on an erroneous interpretation

2    of the relevant [DOL] and Federal Motor Carrier Safety Administration ("FMCSA")

3    regulations, as confirmed by the Ninth Circuit opinion in *Nance v. May Trucking Co.*,

4    685 F. App'x 602 (9th Cir. 2017), several well-reasoned district court decisions, and a

5    July 22, 2019 [DOL] opinion letter." Dkt. 57 at 8.[3] It argues that because Plaintiffs' legal

6    theory is not correct, any minimum wage violation that did occur would be unique to

7    each driver. *Id*. Swift explains that the FSCMA, an entity within the Department of

8    Transportation, sets hours of service regulations governing how drivers record their time

9    in one of four categories: driving, on-duty (not driving), off-duty, and sleeper berth. *Id*. at

10   8.

11   Regarding its policies and practices, Swift argues that except for in rare

12   circumstances, its drivers are not required to sleep in the sleeper berth of their trucks

13   while on the road. *Id*. at 11 (citing Dkt. 57-1 at 4). Swift lists the wide variety of non-

14   driving tasks both it and the FSCMA categorizes as on-duty (not driving) and explains

15   that its instructions to drivers state time should only be recorded as off-duty or sleeper

16   berth if the driver is "relieved of all responsibility and not required to be in work

17   readiness." *Id*. at 11–12 (citations omitted). Additionally, Kevin Quast, Chief Operating

18   Officer of Swift, declares that "Swift's mileage based trip pay and other compensation to

19   each employee driver nearly always exceeds the FLSA minimum wage rate multiplied by

20   the driver's time logged as driving as on-duty (not driving) for each workweek." Dkt. 57-

21

22   [3] The Court notes that the Ninth Circuit's decision in *Nance* is an unpublished disposition, not an opinion. *See* Ninth Circuit Rule 36-3.

1 at 6. He further declares that "in the very rare occasion" where the compensation does not exceed the minimum wage, "Swift pays the difference." *Id*. Swift thus appears to argue by implication that it pays drivers at least minimum wage for all time that drivers could conceivably be considered on duty.

In sum, Swift argues that Plaintiffs are relying on a nonexistent presumption that OTR drivers are continuously on-duty for purposes of the FLSA, and without this presumption, Plaintiffs "need to prove that individual drivers falsely recorded on-duty time as 'off duty' or 'sleeper berth' to such an extent that that their average pay for any workweek fell below the legal minimum for each hour of compensable time." Dkt. 57 at 16. In other words, Swift argues that Plaintiffs cannot be considered similarly situated under their incorrect legal theory, nor can they show they are similarly situated under a proper legal theory. However, the Court does not resolve factual disputes or decide substantive issues going to the merits at this preliminary stage, *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010), and Swift's authorities do not establish the kind of obvious futility it appears to imply should foreclose conditional certification.

Swift is correct that the Ninth Circuit affirmed a district court's grant of summary judgment on a claim similar to Plaintiffs'. *Nance*, 685 F. App'x at 605. The district court was asked to decide whether time spent in the sleeper berth of a moving truck was compensable. *Nance v. May Trucking Co.*, 2014 WL 199136, at *6 (D. Or. Jan. 15, 2014). Considering 29 C.F.R. § 785.21, which provides that "[a]n employee who is *required to be on duty* for less than 24 hours is working even though he is permitted to sleep," the district court found that time spent in the sleeper berth was not compensable

1   because the plaintiffs provided no evidence the defendant required them to be on call or

2   on duty when they were in the sleeper berth. *Id*. at *6–8. The Ninth Circuit affirmed on

3   this point "because the district court properly relied on the persuasive authority of federal

4   and state regulations saying drivers are not entitled to compensation for time they are

5   permitted to sleep in the berths of moving trucks." *Nance*, 685 F. App'x at 605. However,

6   the district court's decision was made at summary judgment, after certification and

7   discovery. Moreover, Plaintiffs are correct that neither the district court nor the Ninth

8   Circuit specifically discussed the theory of a cap on uncompensated time under § 785.22.

9   Dkt. 58 at 12. While these cases may be relevant to a decision on the merits, they do not

10  establish that the Plaintiffs are not similarly situated. The same is true for the other

11  district court opinions the parties cite. *Compare, e.g.*, *Petrone v. Werner Enterps., Inc.*,

12  No. 8:11CV401, 2017 WL 510884, at *7 (D. Neb. Feb 2, 2017) ("[a]ny interpretation of

13  § 785.41 that categorically limits non-compensable sleeper-berth time to 8 hours in a 24-

14  hour cycle renders the language in § 785.41 superfluous") *with Julian*, 360 F. Supp. 3d at

15  946–47 ("Under Swift's reading of § 785.41, an employer could pay an employee for one

16  hour of work each day and then confine him to the sleeper berth for 23 uncompensated

17  hours.").

18      Similarly, Swift cites the DOL opinion letter's conclusion that 29 C.F.R. § 785.41

19  creates a presumption that time in the truck's sleeper berth is not compensable. Dkt. 57 at

20  18 (citing Wage & Hour Div., U.S. Dep't of Labor, FLSA2019–10 (Jul. 22, 2019)). Swift

21  argues the letter is entitled to "conclusive deference" under *Auer v. Robbins*, 519 U.S.

22

ORDER - 13

452 (1997) and *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). *Id*. at 19.[4] While the letter may

be relevant to a decision on the merits of Plaintiffs' legal theory, it does not impact the

similarity among members of Plaintiffs' proposed collective.

Finally, Swift argues that Plaintiffs are not adequate representatives because

Woeck lacks an understanding of collective actions and his duties as a representative and

because McNutt testified that she logged on-duty time as off duty "in violation of federal

law." Dkt. 57 at 25–26.[5] Swift cites pre-*Campbell* authority including *Mondragon v.*

*Vermeer Transp.*, 2009 WL 10672794, at *3 (C.D. Cal. 2009) where it states that "the

adequacy of a class counsel or a class representative is not necessarily irrelevant . . .

because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately

represented." *Id*. at 25. In *Campbell*, the Ninth Circuit stated that "as nonrepresentative

actions, collective actions have no place for considerations such as adequacy or

typicality." 903 F.3d at 1112. Therefore, the Court will not evaluate Plaintiffs' adequacy.

The purpose of the Court's involvement at the conditional certification stage is

"avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite

disposition of the action." *Halle*, 842 F.3d at 224 (citing *Hoffmann–La Roche, Inc. v.*

*Sperling*, 493 U.S. 165, 171–72 (1989)). Plaintiffs' legal theory is categorical—"drivers on

---

[4] At least three district courts have found the letter is not entitled to conclusive deference. *See Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 365 (D. Mass. 2019); *Browne v. P.A.M. Transp., Inc*., No. 516-CV-5366, 2020 WL 412126, at *3–4 (W.D. Ark. Jan 24, 2020); *Julian v. Swift Transp. Co. Inc.*, No. CV-16-00576-PHX-ROS, Dkt. 245 at 3 (D. Ariz. Dec. 10, 2019).

[5] The Court notes that McNutt testified that she logged her time based on her instructions from Swift's representatives. Dkt. 57-2 at 52–53, 59–60.

trips exceeding 24 hours must be compensated for a minimum of 16 hours per day." Dkt.

58 at 13. Thus, at this stage of the pleadings, Plaintiffs' facts sufficiently allege putative

collective members were similarly affected by Swift's policy and are similarly situated

for purposes of this broad legal question. *Campbell*, 903 F.3d at 1109. Plaintiffs have

submitted evidence that they and the putative collective members have similar job

descriptions and are subject to the same or similar compensation policies. The class

definition is limited to drivers who performed work for Swift requiring them to be away

from home for more than 24 hours at a time. Moreover, Plaintiffs are correct that Swift

does not dispute that to the extent Plaintiffs' legal theory is viable, Plaintiffs are similarly

situated to the members of the putative collective. Dkt. 58 at 5. Therefore, for the

purposes of conditional certification, Plaintiffs and putative class members are similarly

situated under Plaintiffs' theory of liability. Whether that theory is viable is a question for

a motion on the merits.

**B.    Personal Jurisdiction**

In *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773,

1777 (2017) ("*Bristol-Meyers*"), plaintiffs in a mass tort action sued Bristol-Meyers

Squibb Co. ("BMS") in California state court, asserting state-law claims related to

injuries caused by BMS's blood-thinner medication. Some plaintiffs were California

residents, and some were not. *Id*. at 1783–84. BMS, incorporated in Delaware and

headquartered in New York, sought to quash service of summons on the nonresident's

claims. *Id*. at 1778. The Supreme Court held that under "settled principles of personal

jurisdiction," the California court lacked personal jurisdiction over the claims of the non-

1   California plaintiffs, who did not claim they were injured in California and could not

2   show an adequate link between their claims and California. *Id*. at 1781–82.

3       The majority noted that its decision "does not prevent the California and out-of-

4   state plaintiffs from joining together in a consolidated action in the State that have

5   general jurisdiction over BMS." *Id*. at 1783. It also noted that "since our decision

6   concerns the due process limits on the exercise of specific jurisdiction by a State, we

7   leave open the question whether the Fifth Amendment imposes the same restrictions on

8   the exercise of personal jurisdiction by a federal court." *Id*. at 1784 (citing *Omni Capital*

9   *Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 & n.5 (1987)). The dissent warned that

10  "[t]he effect of the Court's opinion today is to eliminate nationwide mass actions in any

11  State other than those in which a defendant is 'essentially at home.'" *Id*. at 1789

12  (Sotomayor, J., dissenting) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).

13      District courts have split over how to apply *Bristol-Meyers* to FLSA collective

14  actions. *See, e.g.*, *Chavira v. OS Rest. Servs., LLC*, No. 18-cv-10029-ADB, 2019 WL

15  4769101, at *4–5 (D. Mass. 2019) (collecting cases). No United States Circuit Court of

16  Appeals has decided the question. *Waters v. Day & Zimmermann NPS, Inc.*, No. CV 19-

17  11585-NMG, 2020 WL 2924031, at *3 (D. Mass. June 2, 2020) ("*Waters*").

18      One line of district courts follow *Swamy v. Title Source, Inc*., No. 17-01175 WHA,

19  2017 WL 5196780 (N.D. Cal. Nov. 10, 2017) ("*Swamy*"). *Chavira*, 2019 WL 4769101, at

20  *4. In *Swamy*, the district court reasoned that unlike the mass tort action in *Bristol-*

21  *Meyers*, FLSA collective actions represent federal claims "created by Congress

22  specifically to address employment practices nationwide." 2017 WL 5196780, at *2

1   (citing 29 U.S.C. §§ 202, 207(a)). It emphasized that applying *Bristol-Meyers* to FLSA

2   collective actions would "splinter most nationwide collective actions, trespass on the

3   expressed intent of Congress, and greatly diminish the efficacy of FLSA collective

4   actions as a means to vindicate employee's rights," and concluded that the named

5   plaintiff's claims were the only claims at issue in deciding personal jurisdiction. *Id.*

6       The other line follows *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d

7   8451 (N.D. Ohio 2018) ("*Maclin*"). *Chavira*, 2019 WL 4769101, at *5. For example,

8   agreeing with the decision in *Maclin*, the district court in *Roy v. FedEx Ground Package*

9   *Sys., Inc.*, 353 F. Supp. 3d 43, 58 (D. Mass. 2018) analyzed the similarities "between the

10  nonresident party plaintiffs in *Bristol-Meyers*, the out-of-forum named plaintiffs in Rule

11  23 class actions, and the nonresident opt-in plaintiffs in FLSA suits." It reasoned that

12  "even if the principles stated in *Bristol-Meyers* do not extend to class members in class

13  actions," 29 U.S.C. § 216(b) is a rule of joinder giving legal status to individual opt-in

14  plaintiffs. *Roy*, 353 F. Supp. 3d at 58–59 (citing *Anjum v. J.C. Penney Co.*, No. 13-cv-

15  00460-RJD-RER, 2014 WL 5090018, at *8 (E.D.N.Y. Oct. 9, 2014)). On this basis,

16  FLSA opt-in plaintiffs are analogous to plaintiffs in mass tort actions, and *Bristol-Meyers*

17  thus controls. *Id.* at 60.

18      Swift, a Delaware company with its principal place of business in Arizona, argues

19  that the Court lacks personal jurisdiction over drivers who did not reside in Washington

20  or work for Swift in Washington because "the opt-in nature of the procedure makes

21  collective actions indistinguishable from the mass tort action in *Bristol-Meyers*." Dkt. 57

22  at 26–27 (citing Dkt. 57-1 at 2). Plaintiffs urge the Court to follow cases such as *Swamy*

1    and *Thomas v. Kellogg Co.*, C13-5136RBL, 2017 WL 5256634, *1 (W.D. Wash. 2017), a

2    case decided prior to *Campbell*, where the Court found the defendant had waived its

3    objection to personal jurisdiction and stated that "it is not at all clear that *Bristol-Meyers*

4    even applies to this case, filed in federal court." Dkt. 58 at 14–15.

5         Considering the procedural requirements of specific jurisdiction and the Ninth

6    Circuit's decision in *Campbell*, the Court concludes that *Bristol-Meyers* applies to this

7    case. The District Court for the District of Massachusetts explains the procedural

8    requirements well in *Waters*. "In federal question cases, the Due Process Clause of the

9    Fifth Amendment of the United States Constitution requires only that a defendant

10   maintain 'adequate contacts' with the United States as a whole rather than with the forum

11   state." *Waters*, 2020 WL 2924031, at *2 (citing *United States v. Swiss Am. Bank*, 274

12   F.3d 610, 618 (1st Cir. 2001). "Plaintiff must, however, 'ground its service of process in

13   a federal statute or civil rule.'" *Id*. (quoting *Swiss Am. Bank*, 274 F.3d at 618). "An out-

14   of-state defendant in federal-question cases may be properly served if the federal statute

15   pursuant to which the claim is brought provides for nationwide service of process." *Id*.

16   (citing Fed. R. Civ. P. 4(k)(1)(C)). As the FLSA does not provide for nationwide service

17   of process, service must be made under the forum's long-arm statute. *Id*. (citing Fed. R.

18   Civ. P. 4(k)(1)(A)); *see also Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th

19   Cir. 1989) (in *Omni Capital Intern., Ltd v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 102–03

20   (1987) the Supreme Court implied that "a national service provision is a necessary

21   prerequisite for a court to even consider a nationwide contacts approach.").  The forum's

22

1    long-arm statute is constrained by the minimum contacts analysis. *Waters*, 2020 WL

2    2924031, at *3 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

3          The district court in *Waters* concluded that unlike in the mass tort context, where

4    each individual plaintiff is a real party in interest, "in an FLSA collective action the suit

5    is between the named plaintiff and the defendant." *Waters*, 2020 WL 2924031, at *4.

6    Though it was considering the issue of decertification's impact on an opt-in plaintiff's

7    party status, the Ninth Circuit frames the issue of party status differently. It stated clearly

8    in *Campbell* that "[t]he FLSA leaves no doubt that 'every plaintiff who opts in to a

9    collective action has party status.'" 903 F.3d 1090, 1104 (9th Cir. 2018) (quoting *Halle*,

10    842 F.3d at 225). The Court finds that this framing requires the conclusion that FLSA

11    opt-in plaintiffs are analogous to the mass tort plaintiffs in *Bristol-Meyers*. *See, e.g.*, *Roy*,

12    353 F. Supp. 3d at 60. Thus, because Swift is not subject to general jurisdiction in

13    Washington, the exercise of personal jurisdiction in this case would require each opt-in

14    plaintiff to demonstrate that their claim arose from or is sufficiently related to Swift's

15    relationship to Washington. The record does not demonstrate a basis to conclude that the

16    wages or pay structure of an out-of-state plaintiff who was not assigned to a Washington

17    terminal was related to Swift's activities within Washington.

18          Like other courts reaching this conclusion, the Court "has serious concerns

19    regarding the implications of its ruling on the future of FLSA collective actions and

20    acknowledges the policy arguments raised by other courts." *Chavira*, 2019 WL 4769101,

21    at *6; *see, e.g. Swamy*, 2017 WL 5196780, at *2*, see also Seiffert v. Qwest Corp.*, CV-18-

22    70-GF-BMM, 2018 WL 6590836, at *3–4 (D. Mont. Dec. 14, 2018) (even considering

*Campbell*'s emphasis that each opt-in plaintiff has party status, following *Bristol-Meyers* would prevent district courts from reaching certification by requiring a decision on personal jurisdiction for each new opt-in plaintiff). Despite these serious concerns, the Court concludes that personal jurisdiction is lacking over the claims of Swift employees who did not live or work in Washington.

## C.    Statute of Limitations

The FLSA's statute of limitations is two years, unless the violation was willful, in which case it is three years. 29 U.S.C. § 255(a). The FLSA's statute of limitations continues to run for opt-in plaintiffs until they file consent to join the suit. 29 U.S.C. § 256(b). "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control make it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999).

Plaintiffs argue the Court should equitably toll the statute of limitations during the period this motion was pending and during the notice period. Dkt. 44 at 14 (citing *Reyes v. Pier Enterprising Group, Inc.*, No. EDCV 15-2108 JGB (DTBx), 2017 WL 10619856 (C.D. Cal. June 9, 2017) ("*Reyes*"); and *Walden v. Nevada*, No. 3:14–CV–0320–LRH–WGC, 2015 WL 1186707, *4 (D. Nev. Mar. 16, 2015) ("*Walden*")).  Plaintiffs argue that Swift has been on notice of the claims and that Plaintiffs have been diligent. *Id*.

Swift argues that *Reyes* and *Walden* are outliers. Dkt. 57 at 28. *Reyes* found tolling appropriate because "[w]hile a defendant may provide the identification of and contact information for potential plaintiffs prior to certification, under § 216(b), a defendant is

1  not required to do so until after certification of a class." *Reyes*, 2017 WL 10619856, at *5

2  (citing *Hoffman-La Roche*, 793 U.S. at 170). "Thus, there is a delay, caused by the time

3  required for the resolution of a motion for conditional certification in a FLSA collective

4  action, that diminishes the potential claims of the potential plaintiffs." *Id.* (citations

5  omitted). *Walden* found that because the delay in resolving the motion for conditional

6  certification and notice was not caused by the parties, tolling the statute for the time the

7  motion was pending before the court was equitable. *Walden*, 2015 WL 1186707 at *4.

8        Swift is correct that this Court has rejected the contact information argument

9  adopted in *Reyes*, concluding that tolling is not appropriate because the FLSA does not

10  require a defendant to provide contact information prior to conditional certification.

11  *Douglas v. Xerox Bus. Servs., LLC,* 2014 WL 11320703, at *3 (W.D. Wash. Nov. 21,

12  2014) ("*Douglas*"). However, this Court has also tolled the statute of limitations when the

13  plaintiffs' motion for certification has been pending for over a year, "particularly because

14  this constitutes such a large portion of the overall statute of limitations." *Id*. (citations

15  omitted). In *Douglas*, the Court found the parties were partially responsible for the delay

16  in its decision, but found it was in the interests of justice to toll the statute for the period

17  30 days past the noting date that the motion was pending until the date of the Court's

18  request for supplemental briefing, and for the period 30 days after supplemental briefing

19  until the Court approved notice. *Id.* Swift also cites a number of other district court

20  decisions within the Ninth Circuit which have declined to toll the state of limitations due

21  to the pendency of a certification motion. *See, e.g.*, *Bazzell v. Body Contour Ctrs., LLC*,

22  No. C16-0202JLR, 2016 WL 3655274, at *9 (W.D. Wash. July 8, 2016) (no basis for

1   equitable tolling where plaintiffs failed to identify specific prejudice or delays and failed

2   to address tolling in their reply brief); *Johnson v. Serenity Transportation, Inc.*, No. 15-

3   CV-02004-JSC, 2016 WL 1569984, at *5 (N.D. Cal. Apr. 19, 2016) (agreeing with "the

4   trend in [the Northern District of California] that tolling is inappropriate merely due to

5   the pendency of a certification motion."); *Adedapoidle-Tyehimba v. Crunch, LLC*, No.

6   13-CV-00225-WHO, 2013 WL 4082137, at *7 (N.D. Cal. Aug. 9, 2013) (reasoning that

7   equitable tolling was not appropriate because Congress was aware the statute would run

8   between filing of a complaint and filing of consents by opt-in plaintiffs).

9          In this case, the original deadline for a motion for conditional certification was

10  November 15, 2019. Dkt. 35. On November 12, 2019, the parties stipulated to extend the

11  deadline until December 23, 2019, in order to allow each side to have deposed the other

12  prior to filing. Dkt. 39 at 2. Plaintiffs filed their motion on December 23, 2019. Dkt. 44.

13  On January 2, 2020, Plaintiffs moved for a protective order regarding the location of

14  Woeck's deposition. Dkt. 46. On January 24, 2020, the parties stipulated to continue the

15  deadlines for response and reply to the motion for conditional certification to February

16  21, 2020 and March 9, 2020, to permit time for the Court to resolve the motion for

17  protective order. Dkt. 51. On January 27, 2020, the Court denied Plaintiffs' motion for

18  protective order. Dkt. 53.

19         The Court finds it is in the interests of justice to follow the approach it used in

20  *Douglas*, as the parties were partly responsible for the delay in resolving the motion for

21  conditional certification, but the Court was also partly responsible. *Douglas*, 2014 WL

22  11320703, at *3–4. The Court finds that the period attributable to the Court represents a

1    substantial delay beyond Plaintiffs' control. *Stoll*, 165 F.3d at 1242. The Court will thus

2    toll the statute of limitations for the period the motion was pending before the Court more

3    than 30 days beyond the noting date (beginning April 8, 2020) until the date of this

4    Order, and for the period 30 days after the last supplemental brief (as requested below)

5    until the Court approves notice. *See Douglas*, 2014 WL 11320703, at *4.

6    **D.    Related Settlements**

7            Swift explains that there are three class action settlements that have reached final

8    approval but overlap with the proposed collective—*Burnell v. Swift Transportation* (C.D.

9    Cal. 5:10-cv-00809-VAP-OP) ("*Burnell*"), *Slack v. Swift Transportation* (W.D. Wash.

10   3:11-cv-05843-BHS) ("*Slack*"), and *Hedglin v. Swift Transportation* (W.D. Wash. 3:16-

11   cv-05127-BHS) ("*Hedglin*"). Dkt. 57 at 14. Swift explains that *Burnell* released wage

12   claims by California drivers from March 22, 2006 through January 31, 2019, *Slack*

13   released claims by Washington drivers from July 18, 2008 through October 10, 2017, and

14   *Hedglin* released claims by Washington drivers from August 6, 2015 through January 3,

15   2019 to the extent they were not covered by the *Slack* release. *Id.* at 14–15 (citing Dkt.

16   57-3, Ex. 1 at 2, 8, Ex. 4 at 4–5, 20, Ex. 5, Ex. 8 at 3, 6–7). Plaintiffs do not contest the

17   applicability of these releases. However, they argue that as the release of claims for

18   California residents only extends through January 31, 2019 and the release of claims for

19   Washington residents extends through January 3, 2019, California and Washington

20   residents who drove for Swift after those dates should be eligible to join the collective.

21   Dkt. 58 at 16.

22

1    The Court thus requests that either the parties stipulate or Plaintiffs propose a

2    modified definition of the proposed collective or otherwise propose how the Court should

3    address this limit on eligibility for membership in the notice process. Plaintiffs may do so

4    and Swift may raise any objections as part of the supplemental briefing schedule set out

5    in the Notice section, III.E, of this Order.

6    **E.    Notice**

7        The FLSA requires the Court to provide potential class members with "accurate

8    and timely notice concerning the pendency of the collective action, so that they can make

9    informed decisions about whether to participate." *Hoffmann–La Roche*, 493 U.S. at 170.

10   Here, Plaintiffs ask the Court to approve their proposed notice and consent forms.  Dkt.

11   44 at 13 (citing Dkt. 44-1 at 31–37). In response, Swift requests an opportunity to confer

12   with Plaintiffs regarding the proposed notice and consent forms and to separately submit

13   any objections to the Court. Dkt. 57 at 9–10.

14       The Court requires the parties to meet and confer to determine whether they can

15   stipulate to a mutually acceptable way to address the prior settlements and stipulate to

16   notice and consent forms. If the parties cannot stipulate, Plaintiffs should submit its

17   proposals and reasoning to the Court no later than July 17, 2020. Swift may file any

18   objections by July 27, 2020. Plaintiffs may respond to those objections by July 31, 2020.

19                                        **IV.  ORDER**

20       Therefore, it is hereby **ORDERED** that Plaintiffs' motion for conditional

21   certification, Dkt. 44, is **GRANTED with ruling reserved on the definition of the**

22   **collective and on notice and consent**. The parties shall submit supplemental briefing as

1   requested in section III.E of this Order. The Clerk shall renote the Plaintiffs' motion, Dkt.

2   44, for consideration on the Court's July 31, 2020 calendar.

3          Dated this 7th day of July, 2020.

BENJAMIN H. SETTLE
United States District Judge