THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARY MCNUTT, an individual, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, and DOES 1 through 10, inclusive,<br><br>        Defendants.<br><br>AND<br><br>ROBERT D. WOECK JR. (erroneously named as RICHARD D. WOEK JR.), an individual, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 3:18-cv-05668-BHS<br>(Consolidated with 3:19-cv-05342-BHS)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND FOR APPROVAL OF SERVICE AWARDS AND ATTORNEY'S FEES AND COSTS**<br><br>**NOTE ON MOTION CALENDAR:**<br>**September 16, 2022** |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on September 16, 2022, or as soon thereafter as counsel may be heard, before the Honorable Benjamin H. Settle, of the United States District Court, Western District of Washington, located at 1717 Pacific Avenue, Tacoma, WA 98402, Plaintiff Mary McNutt and Robert D. Woeck, Jr. ("Plaintiffs,") who are the named plaintiffs in the consolidated actions
entitled McNutt/Woeck Jr. v. Swift Transportation Co. of Arizona, LLC, et al., USDC Case 3:18-cv-05668-BHS will and hereby do move for an order approving the FLSA Collective  Action Settlement, Service Awards, and Attorney's fees and costs.

This motion is made on the ground that the Settlement reached by the Parties is fair and reasonable and adequate and resolves a *bona fide* dispute between the Parties for significant monetary relief in a contested matter. Moreover, Plaintiffs' counsel requests for a service award and attorney's fees and costs are fair and reasonable.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth herein, all pleadings and documents on file in these matters, and upon such evidence and arguments as may properly come before the Court at the time of the hearing.

//

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

Case No 3:18-cv-05668-BHS

1    DATED: August 10. 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*s/Joshua Haffner*
Joshua Haffner, WSBA
53292
HAFFNER LAW PC
445 South Figueroa Street,
Suite 2625,
Los Angeles, CA 90071
(213) 514-5681
jhh@haffnerlawyers.com
gl@haffnerlawyers.com

*s/Marina R. Pacheco*
Christopher Noyes,
*admitted pro hac vice*
Marina R. Pacheco,
*admitted pro hac vice*
KABATECK LLP
633 W. Fifth Street, Suite
3200
Los Angeles, CA 90071
(213) 217-5048
cn@kbklawyers.com

**Attorneys for Plaintiffs**
**Mary McNutt and**
**Richard Woeck**

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................. 8

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................... 8

III.    SUMMARY OF THE SETTLEMENT TERMS ................................... 9

        A.      Monetary awards and release of claims ...................................... 9

        B.      Settlement administration and distribution ............................... 11

IV.     DISMISSAL WITHOUT PREJUDICE OF THE TWO REMAINING OPT-
        INS WHO ARE EXCLUDED FROM THE SETTLEMENT IS PROPER .. 11

V.      ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE
        ACTION SETTLEMENTS ............................................................ 12

VI.     THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR
        AND REASONABLE .................................................................. 13

        A.      The proposed settlement is the product of contested litigation ............... 14

        B.      The proposed settlement reflects a fair and reasonable resolution of a *bona
                fide* dispute between the parties. ............................................... 15

                1.      The plaintiffs' range of possible recovery .......................... 16

                2.      The stage of proceedings and amount of discovery completed ....... 17

                3.      The seriousness of the litigation risks faced by the parties ............. 17

                4.      The scope of any release provision in the settlement agreement .... 18

                5.      The experience and views of counsel and the opinion of
                        participating plaintiffs ..................................................... 19

                6.      the possibility of fraud or collusion. .................................. 20

VII.    THE REQUESTED SERVICE AWARD SHOULD BE APPROVED. ........ 20

VIII.   THE PAYMENT OF PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES
        AND PLAINTIFFS' LITIGATTION EXPENSES SHOULD BE
        APPROVED. .......................................................................... 22

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

Case No 3:18-cv-05668-BHS

A.    Plaintiffs' requested attorneys' fee are reasonable. ................................... 22

B.    Plaintiffs' litigation costs should be approved. .......................................... 24

IX.    **CONCLUSION** ................................................................................. 25

Case No 3:18-cv-05668-BHS

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

*American Guard Services, Inc. v. Terminal Security Solutions, Inc.,* No. C18-0603-JCC, 2019 WL 1922751 (W.D. Wash. April 30, 2019).......................................12

*Briggs v. PNC Financial Services Group, Inc.*, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016)..........................................................................................................12

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)..................................13

*Campbell v. City of Los Angeles,* 903 F.3d 1090 (9th Cir. 2018)..........................11

*Cooper v. Winking Lizard, Inc.*, 2017 WL 4465759 (N.D. Ohio October 4, 2017) 12

*Daniels v. Aeropostale W., Inc.,* No. C 12-05755 WHA, 2014 WL 2215708 (N.D. Cal. May 29, 2014)................................................................................17

*Dunn v. Teachers Ins. & Annuity Ass'n of Am., No*. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) ...........................................................12

*Filby v. Windsor Mold USA, Inc.,* 2015 WL 1119732 (N.D. Ohio March 11, 2015) ..................................................................................................13

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013). ...................................11

*Grewe v. Cobalt Mortg*., Inc., No. C16-0577-JCC, 2016 WL 4014114 (W.D. Wash. July 27, 2016)..............................................................................12

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ..........................................................21

*In re Bluetooth Headset Products Liab. Litig.* (9th Cir. 2011) 654 F3d 935 ..........21

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003)................23

*In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........19

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)...............19

*Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880 ...................................20

*Knox v. Jones Grp.*, 2017 WL 3834929 (S.D. Ind. Aug. 31, 2018) ........................12

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ..........................16

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)..... 12, 14

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

*Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105

   (S.D. Cal. Dec. 21, 2017). ......................................................................14

*Rodriguez v. West Publishing Corp.* 563 F.3d 948 (9th Cir. 2009).........................19

*Roes, 1-2 v. SFBSC Management, LLC* 944 F.3d 1035 (9th Cir. 2019).................20

*Sand v. Greenberg,* 2011 WL 784602 (S.D.N.Y. Oct. 6, 2011)..............................19

*Schneider v. Goodyear Tire & Rubber Co.,* 2014 WL 2579637 (N.D. Ohio 2014)13

*Selk v. Pioneers Memorial Healthcare District*, 159 F. Supp. 3d 1164 (S.D. Cal.

   2016)....................................................................................................... 14, 18

*Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224 (N.D. Cal.

   June 22, 2017) ......................................................................................14

*Stetson v. Grissom* (9th Cir. 2016) 821 F3d 1157 ...............................................21

*Talavera v. Sun-Maid Growers of California*., No. 1:15-cv-00842-DAD-SAB,

   2020 WL 2195115 (E.D. Cal. May 6, 2020).........................................11

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 Fed. Appx. 496 (6th Cir.

   2011)......................................................................................................21

*Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982) .............................11

**Statutes**

29 U.S.C. §216(b) ..................................................................................................21

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF FLSA SETTLEMENT AND FOR APPROVAL OF SERVICE AWARDS AND ATTORNEY'S FEES AND COSTS

### I.    INTRODUCTION

Plaintiffs Mary McNutt and Robert D. Woeck, Jr. submit this motion and respectfully request that the Court approve the comprehensive settlement they have reached with regard to the present action pending in the Western District of Washington Case No. 3:18-cv-05668-BHS (consolidated with filed case no. 3:19-cv-05342-BHS).

Named Plaintiffs Mary McNutt and Robert Woeck, individually, and on behalf of all individuals who have filed a Consent Form (collectively "Opt-In Plaintiffs")[1] in the above Case and Defendant Swift Transportation Co. of Arizona, LLC ("Defendant" or "Swift") have reached a Settlement in the present action.

The settlement is memorialized in the Settlement Agreement ("Agreement" or "Settlement"), a copy of which is attached as "**Exhibit 1**."

### II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Mary McNutt filed case no. 3:18-cv-05668-BHS in this Court on August 15, 2018. Plaintiff Robert D. Woeck, Jr. (erroneously named in the Complaint as "Richard D. Woek, Jr.") filed case no. 3:19-cv-05342-BHS in this Court on April 25, 2019. Due to the similarity of the McNutt and Woeck actions, the parties stipulated to consolidating the cases on June 21, 2019. The Court accepted the parties' stipulation

---

[1] The term "Opt-In Plaintiffs" refers to persons who timely filed a Consent Form to be a party-plaintiff to Western District of Washington Case No. 3:18-cv-05668-BHS who are similarly situated to the Plaintiffs and fall under the collective definition. A list of all individuals meeting the definition of Opt-in Plaintiffs, which includes 64 persons, is attached to the Declaration of Robin Rohwer as Exhibit A. The remaining two parties who timely filed a consent form with the Court are not similarly situated with the named plaintiffs and do not fall within the collective definition. Therefore, these two individuals were not included in the settlement. Rohwer Decl. at ¶¶ 6-8. Plaintiffs seek to have these two individuals dismissed from this case without prejudice to their filing a separate action with respect to any such claim they may wish to pursue. See Section IV *infra*.

and ordered the McNutt and Woeck actions consolidated on July 1, 2019, designating McNutt as the lead case. Dkt. 30. On December 23, 2019 Plaintiffs filed a Motion for Conditional Certification of a nationwide Federal Labor Standards Act ("FLSA") class. On July 7, 2020, the Court granted the motion for conditional certification in part and reserved ruling on the proposed Notice and Consent to Join forms to be distributed to putative members of the collective action. Dkt. 59. After supplemental briefing and a subsequent Court order, the Parties submitted a Joint Stipulation to approve the agreed upon Collective Notice and Consent to Join Form. Dkt. 74. On October 29, 2020, the Court approved distribution of notice and opt-in/consent to join forms to a collective defined as: "All current and former employees, employed by Defendant, SWIFT TRANSPORTATION CO. OF ARIZONA, LLC who were based out of a terminal in Washington state and worked as long-haul truck drivers while earning mileage-based pay from January 4, 2019 to present." Dkt. 74, 75. The parties have completed the notice and opt-in process pursuant to the Court's order preliminarily approving the collective. Between December 14, 2020 and January 26, 2021, 66 collective members filed opt-in/consent to join forms. Dkt. 76, 78, 80, 81, 82, 83, 84, 85, 86, 87, 88. On July 7, 2022, the Parties submitted a stipulation for a thirty (30) day extension of time of the deadline to submit dismissal/settlement papers to allow the Parties sufficient time to properly effectuate the terms of the settlement.  Dkt. 101. On July 8, 2022, the Court granted the stipulation and continued the deadline to August 10, 2022. Dkt. 102. Plaintiffs hereby submit the present motion for final approval of settlement and for approval of service awards and attorney's fees and costs.

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A.   Monetary awards and release of claims

Defendants have agreed to pay $450,000 to settle the claims in these actions.  As expressed in the Parties' Settlement Agreement, the total settlement amount shall be used to provide for: (i) Settlement Payments to the Opt-In Plaintiffs; (ii) Service

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

Case No 3:18-cv-05668-BHS

Awards to Plaintiffs Mary McNutt and Robert Woeck Jr.; (iii) Plaintiffs' attorneys' fees; (iv) Plaintiffs' Counsel's Litigation Expenses; and (v) Settlement Administration Expenses. *See* Ex. 1 p. 4 at V(B)-(C). After items (ii) – (v) have been subtracted from the total settlement amount, the remaining amount ("Net Settlement Amount") shall be divided among the named representatives and the Opt-In Plaintiffs, *pro rata* based on the number of weeks that each Plaintiff worked using the following computation: The Settlement Administrator shall divide each Collective Member's workweeks during the applicable period by the total workweeks worked by all Collective Members during the applicable periods to arrive at a ratio for each Collective Member, which shall be the ratio of the Net Settlement Amount that each Collective Member shall receive. *See* Ex. 1 p. 5 at V(D). Each Opt-In Plaintiff's Settlement Payment shall be calculated using the Collective Member List and Data Report to be promptly produced by Defendants. *See* Ex. 1 p. 6 at V(G)(1).

In exchange for these monetary awards, and other consideration detailed in the Agreement, the Collective Members release Defendant from all claims, causes of action, theories, primary rights, and liabilities asserted in the Complaint from the period of August 15, 2015, through the date of approval of the Settlement, as well as any claims, causes of action, theories, primary rights, or liabilities under any state, federal or local law that could have been asserted based on the same or substantially similar factual predicate as the claims in the Complaint, to the fullest extent permitted by law. (*See* Ex. A p. 3 at V(A)(1).

Further, Plaintiffs McNutt and Woeck, release the Defendant from all claims, demands, rights (including primary rights), liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, common law, constitution, public policy, or for violation of any federal, state, or local statute, rules, regulation, ordinance, or law arising out of, relating in any way to, or in connection with any act or omission by or

on the part of Defendant committed or omitted prior to approval of this settlement. *See* Ex. 1 p. 3 at V(A)(2).

### B.    Settlement administration and distribution

After approval of the Settlement, Plaintiffs' Counsel, via ILYM Group, Inc. ("ILYM"), will mail to all Opt-In Plaintiffs and named Plaintiffs a check representing their Settlement Payment based on the *pro rata* formula described in section III.A. above. *See* Declaration of Jonathan Paul ("Paul Decl.") at ¶ 4, attached as "**Exhibit 2**." Additionally, ILYM will provide a mailing address and toll-free telephone number to receive correspondence and inquiries from the representative member. Paul Decl. at ¶ 5.

If any Settlement Payment is returned to ILYM as undeliverable, ILYM will attempt to locate an updated address using the National Change of Address database and/or skip trace efforts and will promptly remail the payments. Paul Decl. at ¶ 7.

## IV.    DISMISSAL WITHOUT PREJUDICE OF THE TWO REMAINING OPT-INS WHO ARE EXCLUDED FROM THE SETTLEMENT IS PROPER

The collective in this action is defined as long-haul truck drivers earning mileage-based pay who worked for Swift while assigned to a Washington state terminal between January 4, 2019 to the present. Haffner Decl. at ¶ 13. As explained below, two of the plaintiffs who opted-in do not fall under this definition and should be dismissed without prejudice. These two opt-ins are identified as Joseph H. Jackson and Larry Lee, and are identified in Exhibit B to Declaration of Robin Rohwer ("Rohwer Decl."), attached as "**Exhibit 3**." The opt-in, Joseph H. Jackson, with employee ID number 414361, worked for Swift while assigned to a terminal in the State of Washington through November 10, 2017, and was then rehired for 12 days in 2019 when he worked exclusively out of a terminal in Utah. Rohwer Decl. at ¶ 6. As such,

Mr. Jackson did not work out of a terminal in the State of Washington during the relevant time period and therefore, does not fall under the collective definition.

The opt-in, Larry Lee, with employee ID number 366677 has an employment termination date of February 18, 2019, and the only pay he received during the time period January 4, 2019 through the date of the filing of this motion was a safety bonus on January 11, 2019. This bonus relates to work prior to January 4, 2019. Mr. Lee did not receive any mileage-based pay during the time period January 4, 2019 through the date of the filing of this motion, and therefore, does not fall under the collective definition. Rohwer Decl. at ¶ 7.

As described above, these two individuals were not long-haul employee drivers of Swift earning mileage-based pay and assigned to a terminal in the state of Washington during the time period January 4, 2019 through the date of the filing of this motion. Rohwer Decl. at ¶ 9. As such, these 2 opt-ins are not similarly situated to the other 66 collective members and were therefore not included in the settlement. Therefore, the Court should dismiss these 2 opt-ins without prejudice to their filing a separate action with respect to any such claim they may wish to pursue.

## V.    ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTION SETTLEMENTS

The Court should use a one-step approval approach for this FLSA collective action settlement. Collective actions under the FLSA are fundamentally different than class actions raised under Rule 23. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013). The due process concerns present in Rule 23 class actions are not present in collective actions brought under the FLSA, because putative class members to the FLSA collective action must affirmatively join the lawsuit by opting-in, instead of opting-out, in order to be bound by decisions from the Court. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982); *Campbell v. City of Los Angeles,* 903

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

Case No 3:18-cv-05668-BHS

1  F.3d 1090, 1113 (9th Cir. 2018) (finding that mimicking Rule 23 standards in FLSA

2  collective actions is not appropriate).

3     Courts regularly apply a one-step approach to determine whether an FLSA

4  settlement should be approved.  *Talavera v. Sun-Maid Growers of California.*, No.

5  1:15-cv-00842-DAD-SAB, 2020 WL 2195115, at *11 (E.D. Cal. May 6, 2020)

6  (denying motion for preliminary approval of a FLSA collective on the basis that Rule

7  23 standards are not appropriate and directing the parties to file a motion for final

8  approval) ; *Cooper v. Winking Lizard, Inc.*, 2017 WL 4465759 (N.D. Ohio October 4,

9  2017); *Knox v. Jones Grp.*, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2018) ("A

10  one-step settlement approval process is appropriate"); *Briggs v. PNC Financial*

11  *Services Group, Inc.*, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (same).

## VI.    THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE

14     The Ninth Circuit has not established criteria for district courts to consider in

15  determining whether an FLSA settlement should be approved. *Dunn v. Teachers Ins. &*

16  *Annuity Ass'n of Am., No*. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan.

17  13, 2016). However, district courts in this circuit have applied a widely-used standard

18  adopted by the Eleventh Circuit, which looks to whether the settlement is a fair and

19  reasonable resolution of a bona fide dispute. *Id.;* see also *Lynn's Food Stores, Inc. v.*

20  *United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Grewe v. Cobalt Mortg*., Inc.,

21  No. C16-0577-JCC, 2016 WL 4014114, at *1 (W.D. Wash. July 27, 2016) ("In

22  reviewing a proposed collective action settlement under the Fair Labor Standards Act

23  (FLSA), a district court must determine whether the settlement represents a fair and

24  reasonable resolution of a bona fide dispute."); see also *American Guard Services, Inc.*

25  *v. Terminal Security Solutions, Inc.,* No. C18-0603-JCC, 2019 WL 1922751 at *1

26  (W.D. Wash. April 30, 2019) (applying *Lynn Food Stores* to approve an FLSA

27  settlement).

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

Where the litigation arises from a private enforcement action under Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation, and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Filby v. Windsor Mold USA, Inc.,* 2015 WL 1119732, at *3 (N.D. Ohio March 11, 2015) (Helmick, *J.*) (quoting *Schneider v. Goodyear Tire & Rubber Co.,* 2014 WL 2579637, at *2 (N.D. Ohio 2014). "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby,* 2015 WL 1119732, at *2 (quoting *Schneider,* 2014 WL 2579637, at *2 (citations omitted)).

The Court, therefore, should perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties. Based on the contested nature of this litigation and the resulting Settlement, this Court should conclude that this Settlement is a reasonable resolution of a *bona fide* dispute in a contested litigation.

### A. The proposed settlement is the product of contested litigation.

The Settlement is a result of contested litigation given the fact that the settlement has been reached in the context of this lawsuit. The *McNutt* lawsuit has been pending for nearly four years, while the *Woeck* lawsuit has been pending for over three years. After consolidation, both cases were resolved only after litigating the case for over three years. Discovery and briefing on this case included, written discovery, depositions, multiple hearings and status conferences, Plaintiffs' Motion for Leave to File a First Amended Complaint, Plaintiffs' Motion for Conditional Certification,

discovery motions, Plaintiff's Motion to Certify Interlocutory Appeal, and a mediation, which resulted in settlement after a mediator's proposal.

Moreover, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. Throughout the litigation, the parties participated in substantial discovery wherein Defendant produced over 21,000 pages of documents which were reviewed and evaluated by Plaintiffs' counsel. *See* Declaration of Christopher B. Noyes ("Noyes Decl.") at ¶ 9, attached as "**Exhibit 4**." Only with the assistance of the Mediator at a private mediation were the Parties able to resolve this dispute after both parties accepted a mediator's proposal. *See* Noyes Decl. at ¶ 17. Declaration of Josh Haffner ("Haffner Decl.") at ¶ 16, attached as "**Exhibit 5**." For these reasons, the Court should conclude that the proposed Settlement is the product of contested litigation.

**B.    The proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute between the parties.**

Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Additionally, courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiffs' range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. See *Selk v. Pioneers Memorial Healthcare District*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016); *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017); *Roberts v. City of*

*Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017). Each factor is analyzed separately below.

### 1. The plaintiffs' range of possible recovery

Here, the Net Settlement amount shall be divided among the named representatives and the Opt-In Plaintiffs, *pro rata* based on the number of weeks that each Plaintiff worked. *See* Ex. 1 p. 5 at V(D). The Net Settlement amount will be no less than $255,428.93 and there are 66 employees, or former employees, who will be receiving this money. Therefore, the average recovery of each of the collective members will be $3,870.13. Paul Decl. at ¶ 9. This amount will be adjusted based on the number of weeks worked. *See* Ex. 1 p. 5 at V(D).

An estimated calculation based on the total amount of weeks worked shows that each collective member is receiving fair compensation under the FLSA. For example, the collective as a whole worked a total of 2,037 weeks up to December 3, 2021. Paul Decl. at ¶ 10. Therefore, assuming that each of the members worked a total of 6 days a week and 24 hours a day, the total amount of pay (at $7.25/hour) owed to the collective as a whole would be $2,126,628 (144 hrs/wk x $7.25 = $1,044/wk) x (2,037/wks) = $2,126,628.00). Moreover, the collective as a whole was previously paid $2,052,719.17 up to December 3, 2021. Paul Decl. at ¶ 10. Therefore, subtracting the amount that the collective as a whole was paid from the amount that the collective should have been paid, shows that the collective as a whole was underpaid a total of $73,908.83 ($2,126,628 - $2,052,719.17 = $73,908.83). Therefore, the Net Settlement amount of $255,428.93 compensates the collective for more than the amount it was underpaid as a whole prior to December 3, 2021. Therefore, the settlement adequately compensates the collective members.

Moreover, the Ninth Circuit rejects the argument that a court must "specifically weigh[] the merits of the class's claim against the settlement amount and quantif[y] the expected value of fully litigating the matter." *Rodriguez*, 563 F.3d 948, 965 (9th Cir.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

2009). Rather the Court should "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965. Based on the contested nature of this litigation and the resulting Settlement, this Court should conclude that this factor weighs in favor of approving the Settlement Agreement.

### 2. The stage of proceedings and amount of discovery completed

This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This case was pending for over three years. The parties participated in written discovery and meet and confers related to that discovery. Noyes Decl. at ¶ 9. Defendant produced over 21,000 pages of documents which were reviewed and evaluated by Plaintiffs' counsel. Noyes Decl. at ¶ 9. The parties also conducted depositions, and briefed multiple motions, including, Plaintiffs' Motion for Conditional Certification, discovery motions and, Plaintiff's Motion to Certify Interlocutory Appeal. Plaintiffs took the deposition of Defendant's designated officer/employee on December 13, 2019. Haffner Decl. at ¶ 11. Defendant took the depositions of Plaintiffs Mary McNutt and Robert D. Woeck, Jr. Haffner Decl. at ¶12.

Further, in preparation for the mediation, the parties exchanged highly relevant information including dates of employment for each collective member; the number of hours worked per day or per shift; the number of on-duty hours worked by the collective member and the amount paid to the collective member. Haffner Decl. at ¶15. Indeed, the Parties had more than enough information to make an informed decision about the terms of the settlement at the time it was made. This factor weighs in favor of approval of the settlement.

### 3. The seriousness of the litigation risks faced by the parties

Not only was this case litigated for more than three years, the parties continue to have adversary views on the merits of Plaintiff's claims. As explicitly stated in the

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

Settlement Agreement "Defendant has denied and continues to deny each of the claims and contentions alleged in the Action. Defendant has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the action." *See* Ex. 1 p. 2 at III.

Moreover, at the time of the settlement of this matter, the ultimate outcome of the litigation was unknown. Defendant argued at mediation that it would be successful on a motion for decertification. See Noyes Decl. at ¶ 16. At the time of settlement, no such motion had been filed or heard by the Court. See Noyes Decl. at ¶ 16. Therefore, having been conditionally certified prior to settlement, both parties ran the risk of further litigation if the case did not settle at mediation in addition to uncertainty of the outcome of the case.

### 4.    The scope of any release provision in the settlement agreement

Courts are hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. See *Daniels v. Aeropostale W., Inc.,* No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which sixty percent of collective-action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case). Here, the release for the collective includes a release of claims from August 15, 2015 to the date of approval of the settlement "*that could have been asserted based on the same or substantially similar factual predicate as the claims in the Complaint*, to the fullest extent permitted by law." (*See* Ex. 1 p. 3 at V(A)(1)(emphasis added). Therefore, this release is directly related to the claims in the lawsuit and should be found to be reasonable.

Although the release by the named Plaintiffs is a little more broad that that of the collective, both of the named Plaintiffs approve of the settlement and have further signed off on the settlement agreement. *See* Ex. 1 p. 3 at V(A)(2); Declaration of Mary

McNutt ("McNutt Decl.") at ¶ 9, attached as "**Exhibit 6**"; Declaration of Robert D. Woeck Jr. ("Woeck Decl.") at Decl. at ¶ 9, attached as **Exhibit 7**; *See* Ex. 1 at pp. 13-14. More specifically, the release by the named Plaintiffs releases all claims against Defendant for any act or omission by or on the part of Defendant committed or omitted prior to approval of the settlement. Although the release is a bit more broad, in addition to the *pro rata* settlement payments, the named Plaintiffs will receive an additional incentive award. See *Selk v. Pioneers Mem. Healthcare Dist*., 159 F.Supp. 3d 1164, 1179 (S.D. Cal. 2016) ("Courts are less skeptical of a broad release of claims when the employee receives independent compensation from the employer as consideration for the release."). Therefore, the release provisions should not preclude a finding that the proposed Settlement Agreement is fair and reasonable.

5.    **The experience and views of counsel and the opinion of participating plaintiffs**

Counsel for Plaintiffs have extensive experience in litigating both class action claims, and wage and hour class action claims. Josh Haffner is licensed to practice in three states and has been practicing complex civil litigation, including class actions, for approximately 24 years. Haffner Decl. at ¶ 4-5. Haffner has acted as class counsel in over a dozen class actions, including wage and hour class actions, and has acted as class counsel through trial. Haffner Decl. at ¶ 5-6. Christopher B. Noyes has handled many high-profile cases including several class actions. Noyes Decl. at ¶ 4. Noyes' practice focuses on trials, including a trial in which Noyes secured a record-setting verdict, the biggest verdict to date in Kings County. Noyes Decl. at ¶ 4.

Further, the settlement is supported by both counsel for Plaintiffs and the named Plaintiffs. McNutt Decl. at ¶ 9; Woeck Decl. at ¶ 9; Haffner Decl. at ¶ 17; Noyes Decl. at ¶ 19. As stated by Josh Haffner, lead counsel for Plaintiffs, the proposal to settle the case "represents a fair and reasonable discount from the realistic recovery and is within the 'ballpark' of a fair, reasonable, and adequate settlement of the wage and hour

collective action claims alleged in this case." Haffner Decl. at ¶ 17. Therefore, this factor weighs in favor of approval of the settlement.

### 6.    the possibility of fraud or collusion.

This case was hotly contested for over three years. Considering the competing views of Plaintiffs and Defendant, the settlement was fairly and honestly negotiated at a full-day mediation led by a highly skilled and experienced class action wage and hour mediator after both parties accepted a mediator's proposal. Haffner Decl. at ¶ 16; Noyes Decl. at ¶ 17. *In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (where the parties participated in voluntary mediation before an experienced mediator and "reached an agreement-in-principle to settle the claims in the litigation," such negotiations are "highly indicative of fairness"). Further, Plaintiffs' counsel seeks a fee award of $149,985.00 with a total settlement amount of $450,000. Despite the almost four years of work on this case, Plaintiffs' counsel seeks only 57 % of the loadstar amount in fees. As such, there is little to no possibility of collusion and this factor weighs in favor of approval of the settlement.

## VII.    THE REQUESTED SERVICE AWARD SHOULD BE APPROVED.

The Agreement contemplates providing a Service Award of $5,000 to each of the named Plaintiffs Mary McNutt and Robert Woeck Jr., to acknowledge their time and effort expended in helping to achieve a settlement.  This payment is in addition to any payment they receive as their *pro rata* share of the Settlement Funds.  Courts may make separate awards to representatives in recognition of their risks taken, time expended, and benefits to the collective.  Service awards have also been awarded in collective actions for similar reasons. *See Sand v. Greenberg,* 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting").

Reasonable incentive awards are intended "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk

undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.* 563 F.3d 948 at 958–959 (9th Cir. 2009); see also *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 at 943 (9th Cir. 2015) ("[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.' " (quoting *Rodriguez*, 563 F.3d at 958)). Therefore, the Ninth Circuit evaluates the propriety of requested incentive payments using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of workplace retaliation. See *Roes, 1-2 v. SFBSC Management, LLC* 944 F.3d 1035 at 1057 (9th Cir. 2019).

The roles of Mary McNutt and Robert Woeck as the Named Plaintiffs in the above action were crucial.  Both named Plaintiffs initiated the two consolidated actions, had their depositions taken, provided more than one sworn declaration in support of filed motions, kept actively involved with the case status, communicated with collective counsel several times a month throughout the litigation, participated in a full-day mediation, and risked reputational harm for being associated with the lawsuit. See McNutt Decl. at ¶¶ 10-12; Woeck Decl. at ¶¶  10-12; Haffner Decl. at ¶¶ 11-12. Moreover, these payments are proportional to service payments recently awarded to Named Plaintiffs in other FLSA actions. *See Cf., e.g., Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).[2] Therefore, the Court should award each named Plaintiff a

---

[2]    *See also*, *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); see also *Lukas v. Advocate*, No. 1:14-cv-2740, D.E. 150 (N.D. Ill. June 29, 2016) (approving $15,000 service award to named plaintiff in FLSA wage

$5,000 service award.

## VIII.  THE PAYMENT OF PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND PLAINTIFFS' LITIGATTION EXPENSES SHOULD BE APPROVED.

### A.  Plaintiffs' requested attorneys' fee are reasonable.

The attorneys' fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act.  29 U.S.C. §216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method.  *Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 Fed. Appx. 496, 498 (6th Cir. 2011) *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (reasonable attorney's fees may be determined using the lodestar approach).

Regardless of the computation method used, the district court should, at a minimum, make (i) an explicit calculation of a reasonable lodestar amount; (ii) a comparison between the settlement's attorney fee award and the benefit to the class or degree of success in the litigation; and (iii) a comparison between the lodestar amount and a reasonable percentage award. *In re Bluetooth Headset Products Liab. Litig.* (9th

---

action); *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713, at *19 (S.D.N.Y. Sept. 22, 2015) (approving $15,000 service payments for each of two named plaintiffs in state and federal wage action); *Puglisi v. TD Bank, N.A.*, No. 13 CIV. 637 GRB, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving $15,000 service payments to two class representatives in combined Rule 23 class action and FLSA collective action); see also 4 Newberg on Class Actions § 11.38, at 11- 80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

1  Cir. 2011) 654 F3d 935, 943; *Stetson v. Grissom* (9th Cir. 2016) 821 F3d 1157, 1165

2  (large disparity between requested and awarded fees—a 70% reduction— "requires a

3  relatively specific articulation of the court's reasoning"). Plaintiffs' Counsel seeks an

4  award of attorney's fees on a percentage basis.

5      Here, the lodestar amount based on the reasonable billing rates of the attorneys

6  who worked on this case is $262,480.00. Despite a lodestar of this amount, Plaintiffs'

7  counsel is only seeking $149,985 (33.33% of the Settlement Amount) in attorney's

8  fees. This amount constitutes only 57 % of the lodestar. As such, the fees sought for

9  the nearly four years of litigation are reasonable.

10     A reasonable billable rate for Joshua H. Haffner's services, based on his 24 years

11 of experience, record, and the going rate in Los Angeles, is $900.00 an hour. Graham

12 Lambert was an associate at Haffner Law, has been an attorney since May of 2015, and

13 is experienced handling civil litigation. A reasonable hourly rate for Mr. Lambert's

14 services, based on his experience and record, and the going rate in Los Angeles, is

15 $450.00. These rates for Mr. Lambert and Joshua H. Haffner were submitted in the

16 motion for attorneys' fees in the different actions, and those motions were granted

17 based on the indicated rate. Vahan Mikayelyan is an attorney at Haffner Law PC, and

18 graduated from Loyola Law School in 2020.  A reasonable hourly rate for Mr.

19 Mikayelyan's services, based on his experience and record, and the going rate in Los

20 Angeles, is $225.00.  Although these are reasonable hourly rates for services of

21 Haffner Law PC, the office often works, and worked on this case, on a contingency

22 basis, rather than an hourly. Haffner Decl. at ¶ 18.

23     Haffner Law PC has tracked the time that the attorneys have worked on these

24 matters. Joshua H. Haffner has worked 82.4 hours on this case.  Mr.  Lambert worked

25 132.5 hours on this matter. Mr. Mikayelyan has worked 26.4 hours on this matter.

26 Thus, the total attorney fees/lodestar for this case by Haffner Law is $154,260.00.

27 Haffner Decl. at ¶ 19.

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

A reasonable billable rate for Christopher B. Noyes's services, a partner with Kabateck LLP, based on his 12 years of experience, record, and the going rate in Los Angeles, is $725.00 an hour. Marina R. Pacheco is an associate at Kabateck LLP, has been an attorney since May of 2014, and is experienced in handling civil litigation.  A reasonable hourly rate for Marina R. Pacheco's services, based on her experience and record, and the going rate in Los Angeles, is $550.00. Nicole Duran is a paralegal at Kabateck LLP and a reasonable hourly rate for her services is $125. See Noyes Decl. at ¶ 16.

Kabateck LLP has tracked the time that the attorneys have worked on these matters. Christopher B. Noyes has worked 48.4 hours on this case.  Ms. Pacheco has worked 96.6 hours on this matter. Ms. Duran has worked 160 hours on this matter. Thus, the total attorney fees/lodestar for this case by Kabateck LLP is $ 108,220. See Noyes Decl. at ¶ 25.

Between the two firms, the firms expended a reasonable number of hours on this case over the course of over three years which totaled 546.3. Moreover, the hourly rates are reasonable. See Noyes Decl. at ¶ 22-26; Haffner Decl. at. ¶ 18. Despite a lodestar of $262,480.00, Plaintiffs counsel is only seeking 33.33% of the settlement amount in attorney's fees which accounts for only 57% of the lodestar that is based on reasonable calculations. Moreover, Plaintiffs' counsel took this case on a contingency fee basis, without having a guarantee of success of the litigation and incurred a total of $18,346.34 in actual out-of-pocket costs. See Noyes Decl. at ¶ 24; 28-30; Haffner Decl. at ¶ 20. Therefore, Plaintiffs' counsel requested attorney fee is reasonable and should be approved.

**B. Plaintiffs' litigation costs should be approved.**

Through the filing of this motion, Plaintiffs' counsel have incurred certain costs related to this case.  Plaintiffs' Counsel has requested approval of the reimbursement of these costs, as set forth in the Settlement Agreement. *See* Ex. 1 p. 4 at (V)(C)(2). The

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

expenses are "of the type routinely charged to ... hourly fee-paying clients," and qualify for reimbursement out of the common fund settlement. *See In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 535 (E.D. Mich. 2003). Noyes Decl. at ¶ 29. The expenses are detailed by category in Counsel's Declarations, and invoices or receipts can be produced upon request. The expenses incurred are reasonable and their reimbursement should be approved. See Noyes Decl. at ¶ 24; 28-30; Haffner Decl. at ¶ 20. To date, Haffner Law PC has incurred expenses of $10,380.30 in pursuing the instant litigation Haffner Decl. at ¶20. Kabateck LLP has incurred expenses of $7966.04 in pursuing the instant litigation. Noyes Decl. ¶ 28-30. Costs of $18,346.34 for nearly four years of litigation in this complex action is more than reasonable. Accordingly, the requested award of litigation costs should be approved.

## IX.    CONCLUSION

The Parties reached this Settlement as the result of contested litigation, and it resolves a *bona fide* dispute between the Parties. The Parties engaged in lengthy discovery, motion practice, and analysis of pertinent information, and resolved the issues between them with the assistance of an experienced mediator. The Settlement is fair and reasonable and adequate and resolves a *bona fide* dispute between the Parties for significant monetary relief in a contested matter. For these reasons, the Court should approve the Settlement Agreement and award Plaintiffs' counsel the requested fees and costs that were incurred over the course of this nearly four-year litigation.

1    DATED: August 10. 2022

2

*s/Joshua Haffner*
Joshua Haffner, WSBA
53292
HAFFNER LAW PC
445 South Figueroa Street,
Suite 2625,
Los Angeles, CA 90071
(213) 514-5681
jhh@haffnerlawyers.com
gl@haffnerlawyers.com

3

4

5

6

7

*s/Marina R. Pacheco*
Christopher Noyes,
*admitted pro hac vice*
Marina R. Pacheco,
*admitted pro hac vice*
KABATECK LLP
633 W. Fifth Street, Suite
3200
Los Angeles, CA 90071
(213) 217-5048
cn@kbklawyers.com

8

9

10

11

12

**Attorneys for Plaintiffs
Mary McNutt and
Richard Woeck**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

Case No 3:18-cv-05668-BHS

1

2

## **CERTIFICATE OF SERVICE**

3      I hereby certify that I electronically filed the foregoing with the Clerk of the

4  Court for the United States District Court, Central District of California by using

5  the CM/ECF system on August 10, 2022.

6      Participants in the case who are registered CM/ECF users will be served by

7  the CM/ECF system.

8

9                                    */s/ Marina R. Pacheco*
                                     Marina R. Pacheco
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF FLSA COLLECTIVE
ACTION SETTLEMENT

Case No 3:18-cv-05668-BHS